1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUDY ROJAS,　　　　　　　　　　　） | 1:09-cv-0725 SKO |
| 　　　　　　　　　　　　　　　　） | |
| 　　　　　　　　　　　　　　　　） | **ORDER REGARDING PLAINTIFF'S** |
| 　　　　　Plaintiff,　　　　　） | **SOCIAL SECURITY COMPLAINT** |
| 　　　　　　　　　　　　　　　　） | |
| 　　v.　　　　　　　　　　　　） | (Doc. 1) |
| 　　　　　　　　　　　　　　　　） | |
| MICHAEL J. ASTRUE,　　　　　） | |
| Commissioner of Social Security,　） | |
| 　　　　　　　　　　　　　　　　） | |
| 　　　　　Defendant.　　　　） | |
| 　　　　　　　　　　　　　　　　） | |
| _____） | |

## INTRODUCTION

　　　　Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his application for Supplemental Security Income ("SSI") pursuant to Title XVI of the Social Security Act (the "Act"). 42 U.S.C. §§ 405(g), 1383(c)(3). The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. (Docs. 8, 10.) On April 7, 2010, the action was reassigned to the Honorable Sheila K. Oberto for all purposes. *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; *see also* L.R. 301, 305.

## FACTUAL BACKGROUND

Plaintiff was born in 1965, has completed an eighth-grade education, and can read and write. (AR 54.)  Plaintiff last worked in 2003 in a packing house where he lifted boxes and operated a machine to destroy them.  (AR 54-55.)  Plaintiff has had diabetes for 15 years; he stepped on a nail in 2005, causing an infection in his right foot.  (AR 56.)  Plaintiff's wound never healed, and his toes and part of his foot were amputated in November 2007; Plaintiff was prescribed a wheelchair.  (AR 57-58.)

On January 20, 2006, Plaintiff filed an application for SSI, alleging disability beginning on May 2, 2004, due to diabetes, foot infection, and back pain.  (AR 128-34, 150.)  On July 17, 2006, Dr. M. O. Nawar, a state agency physician, assessed Plaintiff's physical residual functional capacity ("RFC ").  (AR 212-16.)  The doctor opined that Plaintiff could occasionally lift and/or carry up to 20 pounds and frequently up to 10 pounds.  He could (1) stand and/or walk for a total of about six hours in an eight-hour workday; (2) sit for about six hours in an eight-hour workday; and (3) perform unlimited pushing and/or pulling.  (AR 213.)  Dr. Nawar determined that Plaintiff could frequently balance, kneel, crawl, and climb ramps and stairs, but never ladders, ropes, or scaffolds.  (AR 214.)  He could occasionally stoop and crouch.  (AR 214.)  Plaintiff had no manipulative, visual, or communicative limitations.  (AR 214-15.)  Because of Plaintiff's limitation due to back pain, he was to avoid concentrated exposure to hazards such as machinery and heights.  (AR 215.)

On February 17, 2007, Dr. Damania, an internist, performed a consultative examination of Plaintiff.  (AR 246-49.)  Dr. Damania's diagnoses included insulin-dependent diabetes mellitus, hypertension, and a diabetic right foot.  (AR 248-49.)  After examining Plaintiff and reviewing his medical records, Dr. Damania's functional assessment of Plaintiff was as follows: "[Plaintiff] should be able to walk perhaps only two hours.  There are no restrictions for sitting.  No assistive device necessary." (AR 249.) "He should be able to lift 20 pounds occasionally and 10 pounds frequently." (AR 249.) "There are no postural limitations.  There are no manipulative limitations.  There are no visual or communicative limitations.  Workplace environmental limitations would include climbing, balancing, prolonged standing, and prolonged walking." (AR 249.)

On March 2, 2007, Dr. L. V. Bobba, another state agency physician, assessed Plaintiff's physical RFC. (AR 250-54.) Dr. Bobba opined that Plaintiff could (1) occasionally lift and/or carry up to 20 pounds and frequently up to 10 pounds; (2) stand and/or walk for a total of at least two hours in an eight-hour workday; (3) sit for about six hours in an eight-hour workday; and (4) perform unlimited pushing and/or pulling. (AR 251.) Dr. Bobba also determined that Plaintiff could frequently stoop, kneel, and crouch, and could occasionally climb, balance, and crawl. (AR 252.) Plaintiff had no manipulative, visual, or communicative limitations, but was to avoid uneven terrain. (AR 252-53.)

On December 17, 2007, one month after Plaintiff's surgical amputation, Dr. Srinivasan, a resident internist, completed a "Medical Source Statement of Ability to Do Work-Related Activities (Physical)" form.[2] (AR 335-41.) Dr. Srinivasan opined that Plaintiff could (1) lift and carry ten pounds occasionally, (2) sit three hours at one time for a total of two hours in an eight-hour workday, (3) stand three hours at one time for a total of one hour in an eight-hour workday, and (4) walk one hour at one time for a total of one hour in an eight-hour workday. (AR 335-36.)

Dr. Srinivasan also stated that Plaintiff had to use crutches to walk. (AR 336.) Plaintiff could occasionally operate foot controls with both feet. (AR 337.) Plaintiff could never (1) climb stairs, ramps, ladders, or scaffolds, (2) balance, (3) stoop, (4) kneel, (5) crouch, (6) crawl, (7) work at unprotected heights or around moving mechanical parts, or (8) operate a motor vehicle. (AR 338-39.) Plaintiff was also to avoid (1) humidity and wetness, (2) dust, odors, fumes, and pulmonary irritants, (3) extreme cold, (4) extreme heat, (5) vibrations, and (6) moderate office noise. (AR 339.) Additionally, Plaintiff could not (1) shop, (2) travel without a companion, (3) walk a block on uneven terrain, (4) use public transportation, or (5) climb a few steps with the use of a single hand rail. (AR 340.)

The Commissioner denied Plaintiff's application initially and again on reconsideration; consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 77-

---

[2] A medical source statement is a statement by an acceptable medical source about what a claimant can still do despite his impairments based on the acceptable medical source's findings. 20 C.F.R. § 416.913(b)(6). "Acceptable medical sources" include licensed physicians. *Id.* § 416.913(a)(1).

98, 100-05.) On December 18, 2007, ALJ Christopher Larsen held a hearing. During the course of the hearing, the ALJ asked a vocational expert ("VE") the hypothetical question of whether a person could perform any jobs in the national economy if he were of the same age, education, and work experience as Plaintiff and (1) could lift and carry 20 pounds occasionally and 10 pounds frequently; (2) could stand and walk a total of two hours per day; (3) could sit for six hours per day; (4) could never climb ladders, ropes, or scaffolds; and (5) had to avoid concentrated exposure to hazards. (AR 66.)  The VE testified that such an individual could perform the jobs of semi-automatic sewing machine operator, ticket seller, and tacking machine operator, which are all light[3] and unskilled work. (AR 67-69.)  If such an individual were restricted from using either foot to operate a foot control, the individual could work at the light exertional level as a ticket seller or cashier. (AR 73.) There would be no jobs available, however, if such an individual could only (1) lift and carry 10 pounds occasionally and less than 10 pounds frequently; (2) stand and walk for a total of two hours in an eight-hour day; and (3) sit for a total of two hours in an eight-hour day. (AR 69-70.)

Plaintiff testified at the hearing that he lived with his sister and was able to attend to his personal needs. (AR 62.)  He also stated that he did no housework or yard work and that he was unable to drive. (AR 62-63.)  Plaintiff stated that his daily activities consisted of watching television while lying down or in a seated position. Further, Plaintiff stated that he did not recall being treated by Dr. Srinivasan, a physician who completed a medical source statement on Plaintiff's behalf one day before the hearing. (AR 59, 335-41.)

On March 10, 2008, the ALJ issued a decision finding Plaintiff not disabled since the date of his application on January 20, 2006. (AR 12-23, 48-76.) Specifically, the ALJ found that Plaintiff (1) had not engaged in substantial gainful activity since the application date of January 20, 2006; (2) has an impairment or a combination of impairments that is considered "severe" based on the requirements in the Code of Federal Regulations; (3) does not have an impairment or combination of impairments that meets or equals one of the impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) has no past relevant work; and (5) could perform jobs that exist in significant

_____

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 416.967(b).

1    numbers in the national economy. (AR 17-23.) Plaintiff sought review of this decision before the

2    Appeals Council. On March 23, 2009, the Appeals Council denied review. (AR 2-5.) Therefore,

3    the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.981, 416.1481.

4    On April 23, 2009, Plaintiff filed a complaint before this Court seeking review of the ALJ's decision.

5    Plaintiff argues that the ALJ erred in rejecting Dr. Srinivasan's opinion in favor of the opinions of

6    Dr. Damania and the state agency medical consultants.

7                                            **SCOPE OF REVIEW**

8            The ALJ's decision denying benefits "will be disturbed only if that decision is not supported

9    by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir.

10   1999). In reviewing the Commissioner's decision, the Court may not substitute its judgment for that

11   of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must

12   determine whether the Commissioner applied the proper legal standards and whether substantial

13   evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d

14   909, 911 (9th Cir. 2007).

15           "Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v.*

16   *Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). "Substantial evidence" means "such

17   relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

18   *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consol. Edison Co. of N.Y. v. NLRB*, 305

19   U.S. 197, 229 (1938)). The Court "must consider the entire record as a whole, weighing both the

20   evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may

21   not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*,

22   504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted).

23                                            **APPLICABLE LAW**

24           An individual is considered disabled for purposes of disability benefits if he is unable to

25   engage in any substantial, gainful activity by reason of any medically determinable physical or

26   mental impairment that can be expected to result in death or that has lasted, or can be expected to

27   last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A),

28   1382c(a)(3)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003). The impairment or

impairments must result from anatomical, physiological, or psychological abnormalities that are demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial, gainful work that exists in the national economy.  42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

The regulations provide that the ALJ must undertake a specific five-step sequential analysis in the process of evaluating a disability.  In the First Step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity.  20 C.F.R. §§ 404.1520(b), 416.920(b).  If not, in the Second Step, the ALJ must determine whether the claimant has a severe impairment or a combination of impairments significantly limiting her from performing basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If so, in the Third Step, the ALJ must determine whether the claimant has a severe impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. 404, Subpart P, App. 1.  20 C.F.R. §§ 404.1520(d), 416.920(d).  If not, in the Fourth Step, the ALJ must determine whether the claimant has sufficient residual functional capacity despite the impairment or various limitations to perform her past work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If not, in Step Five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in significant numbers in the national economy.  20 C.F.R. §§ 404.1520(g), 416.920(g).  If a claimant is found to be disabled or not disabled at any step in the sequence, there is no need to consider subsequent steps. *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. §§ 404.1520, 416.920.

## DISCUSSION

The ALJ gave significant weight to the opinions of the state agency medical consultants and the opinion of Dr. Damania, the consultative examiner.  (AR 21.)  Further, the ALJ afforded less weight to the opinion of Plaintiff's treating physician, Dr. Srinivasan.  Plaintiff maintains that the ALJ erred in doing so.

### A.   Legal Standard

The medical opinions of three types of medical sources are recognized in Social Security cases: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat

the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  Generally, a treating physician's opinion should be accorded more weight than opinions of doctors who did not treat the claimant, and an examining physician's opinion is entitled to greater weight than a nonexamining physician's opinion.  *Id.*  Where a treating or examining physician's opinion is uncontradicted by another doctor, the Commissioner must provide "clear and convincing" reasons for rejecting the treating physician's ultimate conclusions.  *Id.*  If the treating or examining doctor's medical opinion is contradicted by another doctor, the Commissioner must provide "specific and legitimate" reasons for rejecting that medical opinion, and those reasons must be supported by substantial evidence in the record.  *Id.* at 830-31; *accord Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009).  The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.  *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

**B.    Analysis**

Because the opinions of the examining physician Dr. Damania and the nonexamining state agency medical consultants contradicted Dr. Srinivasan's opinion, the ALJ was required to provide specific and legitimate reasons for rejecting Dr. Srinivasan's opinion.[4]  First, the ALJ legitimately found that Dr. Srinivasan's opinion was internally inconsistent because the doctor opined that Plaintiff can sit for three hours at a time, but only two hours total in an eight-hour workday, and can stand three hours at a time, but only one hour total in an eight-hour workday.  (AR 21, 336.)  *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (ALJ provided specific and legitimate reasons for rejecting treating doctor's opinion, as opinion was inconsistent with doctor's examination notes as well as internally inconsistent and not supported by any findings made by treating doctor or any other doctor); *Young v. Heckler*, 803 F.2d 963, 968 (9th Cir. 1986) (per curiam) (treating

---

[4] The parties dispute whether Dr. Srinivasan is a treating or examining physician.  The distinction is irrelevant here, because in either case the ALJ need only provide specific and legitimate reasons for rejecting Dr. Srinivasan's opinion. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 & n.8 (9th Cir. 2009); *Lester*, 81 F.3d at 830-31.

doctor's conclusory opinion that claimant was disabled was properly rejected by ALJ when it was internally inconsistent and not consistent with doctor's prior medical reports).

Second, Dr. Srinivasan opined that Plaintiff's environmental limitations included avoiding (1) unprotected heights; (2) moving mechanical parts; (3) operating a motor vehicle; (4) humidity and wetness; (5) dust, odors, fumes, and pulmonary irritants; (6) extreme cold; (7) extreme heat; (8) vibrations; and (9) moderate office noise.  (AR 21, 339.)  The ALJ found, however, that these limitations did not correspond to any medically determinable impairment.  (AR 21.)

In *Rollins*, the court held that the ALJ provided adequate reasons for not fully crediting the opinion of the claimant's treating physician.  Some of the treating physician's recommendations "were so extreme as to be implausible and were not supported by any findings made by any doctor," including the treating physician.  261 F.3d at 856.  In particular, the treating physician claimed that the claimant's condition prevented her from engaging in any bending, stooping, crouching, crawling, kneeling, climbing, and balancing, and also indicated that the claimant should never be exposed to any smoke, fumes, dust, temperature extremes, humidity, vibrations, or noise, among other things. *Id.*  The court in *Rollins* found that there was no indication in the record regarding the basis for these restrictions, and the claimant herself had never claimed to have any problems with many of the conditions and activities that the treating physician instructed her to avoid.  *Id.*

Here, as in *Rollins*, the lack of a basis for Dr. Srinivasan's opinion regarding Plaintiff's environmental limitations was a specific and legitimate reason for the ALJ to discount the doctor's opinion.  *See also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (affirming ALJ's rejection of the controverted opinion of claimant's treating physician because the opinion was conclusory, in checklist form, and not supported by the record as a whole, or by objective medical findings); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings."); *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996) (ALJ properly rejected doctor's opinion because it was in the form of check-off reports with no explanation of the basis of the conclusions).

Further, the ALJ's observation that Plaintiff sat down at the hearing in contravention of Dr. Srinivasan's opinion that Plaintiff could never stoop was another legitimate reason to discount the doctor's opinion. (AR 21.) *See Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) ("The inclusion of the ALJ's personal observations does not render the decision improper."). In addition, in rejecting Dr. Srinivasan's opinion, the ALJ legitimately considered Plaintiff's testimony at the hearing that he did not recollect being treated by Dr. Srinivasan, as the ALJ must consider, *inter alia*, the nature and extent of the treatment relationship when deciding not to give a treating source's opinion controlling weight. *See* 20 C.F.R. § 416.927(d)(2)(ii); *see also Magallanes v. Bowen*, 881 F.2d 747, 751, 755 (9th Cir. 1989) (ALJ need not recite "magic words" to reject treating physician's opinion–court may draw specific and legitimate inferences from ALJ's opinion). The fact that Plaintiff could not remember his treating physician strongly suggests that the treatment relationship between the two was minimal. A minimal treatment relationship is a proper factor to consider when assigning weight to a medical opinion. *See Magallanes*, 881 F.2d at 751. Thus, the ALJ did not err in considering this factor in assigning less weight to Dr. Srinivasan's opinion.

Moreover, Dr. Srinivasan's opinion was contradicted by the opinion of Dr. Damania, the consulting examiner who found, after examining Plaintiff in February 2007, that he could (1) walk for two hours; (2) sit without restrictions; (3) lift 20 pounds occasionally and 10 pounds frequently; and (4) work as long as no climbing, balancing, prolonged standing, and prolonged standing were involved. (AR 249.) Dr. Damania's opinion, in turn, was supported by a state agency physician in March 2007. (AR 250-54.) *See* 20 C.F.R. § 416.927(f)(2)(i) (state agency physicians and psychologists are considered highly qualified physicians and psychologists who are also experts in Social Security disability evaluation). An examining source's contrary opinion, resting on his own independent examination of the claimant, is a specific and legitimate reason for discounting the opinion of a treating physician. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

Plaintiff maintains, however, that the ALJ erred in giving significant weight to medical opinions rendered months before his surgical amputation in November 2007, rather than affording

1  controlling weight to Dr. Srinivasan's opinion given a month after Plaintiff's surgery.  Indeed, a

2  treating physician's most recent medical reports can be highly probative.  *Osenbrock v. Apfel*, 240

3  F.3d 1157, 1165 (9th Cir. 2001); *cf. Stone v. Heckler*, 761 F.2d 530, 532 (9th Cir. 1985) (in a case

4  involving a claimant with a worsening condition, holding that medical evaluations prepared several

5  months before hearing are not substantial evidence sufficient to rebut more recent conclusions by

6  a treating doctor).  However, in a case where the most recent medical report by a treating physician

7  was "brief and conclusory in form with little in the way of clinical findings," the Ninth Circuit

8  has held that substantial evidence supported the ALJ's conclusion that the claimant was not

9  precluded from performing his past relevant work.  *Young*, 803 F.2d at 968 (distinguishing *Stone*).

10  Here, as noted, Dr. Srinivasan's medical source statement provided no details as to clinical

11  examinations or assessments used to reach the doctor's conclusions.  Thus, Dr. Srinivasan's opinion

12  was rendered conclusory and unsupported by objective medical evidence.  Under such

13  circumstances, the ALJ was not required to give greater deference to Dr. Srinivasan's more recent

14  findings.  *See id.*

15  In sum, the ALJ gave specific and legitimate reasons, supported by the record, for rejecting

16  Dr. Srinivasan's opinion.  Accordingly, the ALJ's findings are supported by substantial evidence and

17  are legally correct.

18  ## CONCLUSION

19  Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial

20  evidence in the record as a whole and is based on proper legal standards.  Accordingly, the Court

21  DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security.

22  The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Michael J. Astrue,

23  Commissioner of Social Security, and against Plaintiff Rudy Rojas.

24

25  IT IS SO ORDERED.

26  **Dated:    August 11, 2010**                    **/s/ Sheila K. Oberto**
                                                      UNITED STATES MAGISTRATE JUDGE

27

28

10